IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| ROBERT McCLUSKY, | ) | CASE NO. 1:14-CV-519 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| LAKE HOSPITAL SYSTEM, INC., | ) | |
| | ) | **RULING ON DEFENDANT'S** |
| | ) | **MOTIONS FOR JUDGMENT AS** |
| Defendant. | ) | **MATTER OF LAW** |
| | ) | |

This case arises out of Plaintiff Robert McClusky's employment as a PRN sonographer with Defendant Lake Hospital System, Inc. Following the conclusion of a six-week orientation, Plaintiff was not scheduled to work any shifts as a PRN sonographer and was subsequently terminated.

Plaintiff alleged that Defendant terminated him because he was a male. He also alleged that he was terminated because he hired an attorney to oppose what he believed to be unlawful sex discrimination. Plaintiff maintained that Defendant's actions constituted unlawful gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code Chapter 4112. Plaintiff also argued that his termination violated Ohio public policy.

During a trial on the merits, Defendant twice moved for judgment as a matter of law. At the close of Plaintiff's case, Defendant moved for judgment on three grounds, arguing that Plaintiff failed to meet his burden with regard to his gender discrimination, retaliation, and Ohio public policy claims. The Court granted the motion as to the public policy claim. At the close of its case, Defendant again requested dismissal of Plaintiff's discrimination and retaliation claims.

1

The Court dismissed the discrimination claim, but concluded that there was sufficient evidence for the retaliation issue to go to the jury.

The Court's summary conclusions as announced during trial are memorialized in the trial transcript. The following serves as a more formal recitation of the Court's findings.

### I.　LEGAL STANARD

A motion for judgment as a matter of law requires the Court to decide "whether there was sufficient evidence presented to raise a material issue of fact for the jury." *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 280 (6th Cir. 1991). The Court is bound to "view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences." *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994). Judgment as a matter of law is proper where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue," and where the claim "cannot under the controlling law be maintained . . . without a favorable finding on that issue." Fed. R. Civ. P. 50(a). In other words, "[j]udgment as a matter of law may only be granted if . . . there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). The Court cannot weigh the evidence, evaluate the credibility of the witnesses, or substitute its judgment for that of the jury. *Wayne*, 36 F.3d at 525.

#### A. SEX DISCRIMINATION

To prevail on his reverse gender discrimination claims arising under Title VII and Ohio law, Plaintiff sought to prove that Defendant acted with a discriminatory motive. Plaintiff attempted to put on direct evidence of discrimination and to establish a *prima facie* showing of

2

discrimination.  After viewing the evidence in the light most favorable to Plaintiff, the Court determined that Plaintiff failed to meet his evidentiary burden under either approach.

In discrimination cases direct evidence is defined as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger*, 319 F.3d 858, 865 (2003).  Unlike circumstantial evidence, direct evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.*  Direct evidence of discrimination "must establish not only that the plaintiff's employer was predisposed to discriminate . . . but also that the employer acted on that predisposition." *Momah v. Dominguez*, 239 F. App'x 114, 121 (6th Cir. 2007) (*citing DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (quotation omitted)).

As direct evidence of discrimination, Plaintiff pointed to the fact that he was the only male sonographer the Defendant had ever hired.  The evidence adduced at trial, however, indicated that very few, if any, men other than Plaintiff, had ever applied to work as ultrasound technicians.  In addition, the testimony revealed that where males had applied for positions within the larger radiology department, several were employed.  Under these circumstances, a jury could do nothing more than infer discriminatory animus.

Plaintiff also highlighted the absence of a written policy allowing male sonographers to perform breast and pelvic examinations.  Nevertheless, a jury would have to infer from this fact that Defendant had not implemented a policy because it was prejudiced against men, rather than for a number of other potential reasons.  For example, because Plaintiff was the first male sonographer employed by Defendant, a jury could conclude that a policy had not been implemented due to lack of prior need.  As Plaintiff testified, the medical center where he was

3

currently employed as a sonographer did not have such a policy until Plaintiff developed one. A jury could also infer that the absence of a policy was due to inefficiency on the part of the institution in reducing a policy to writing, or the institution's reliance on an oral policy addressing the same, which various Lake Hospital System employees testified existed.

Finally, Plaintiff argued that its Exhibit 17 served as evidence of direct gender discrimination. The exhibit was a memorandum titled "Orientation Issues." Diane Weber, the director of Lake Hospital System's radiology department, testified that she composed the document at some point prior to Plaintiff's termination. The memorandum recounted the technical and behavioral issues Plaintiff allegedly exhibited during his orientation. Item 7 of the document was titled "Protocol for male technologist and TV and breast studies" and addressed Plaintiff's ability to perform pelvic and breast studies.

Although Item 7 revealed that Plaintiff was treated differently than female technologists, the Court concluded that it did not directly reflect a discriminatory animus. The statement indicated that Defendant was concerned with Plaintiff's abilities as a sonographer, and that his performance deficits motivated its decision to exclude breast and pelvic examinations from the scope of his responsibilities. Female technologists would perform these tests while Plaintiff was on duty. Female employees would be available to do so, because by virtue of his status as a PRN, Plaintiff would never be working alone in the department. Plaintiff's work would focus on other types of studies. As recounted, the statement did not directly evidence unlawful prejudice or motive.

To the extent, if any, that Item 7 indicates that Plaintiff could not perform breast or pelvic examinations alone in the department, without a chaperone, it also does not suggest an animus. Plaintiff testified that the practice of having a chaperone accompany a male technologist during

4

sensitive examinations was an appropriate policy and that it was motivated by concern for patients, rather than any unlawfully discriminatory view toward males.

Absent direct evidence of discrimination, Plaintiff's reverse gender discrimination claims must be analyzed under a modified version of the framework set out in *McDonnell Douglass Corporation v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of reverse gender discrimination, the plaintiff must demonstrate four things: (1) that the defendant is the "unusual employer who discriminates against the majority"; (2) that the plaintiff was qualified for the position in question; (3) that the plaintiff suffered an adverse employment action; and (4) that the defendant treated differently employees who were similarly situated but were not members of the protected class. *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004).

Regarding proof of similarly situated employees, a plaintiff is not required to show he and a comparator had identical performance histories, but the law in the Sixth Circuit does require that a plaintiff demonstrate he is similarly situated in all *relevant* respects. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008). The comparator ought to "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

At trial, Plaintiff failed to meet his burden on the fourth prong of the analysis. The closest evidence Plaintiff pointed to in terms of specific similarly situated comparators was ultrasound coordinator Carol Rossa's testimony that other ultrasound trainees had committed some of the same technical errors as Plaintiff. However, there was no evidence demonstrating that Defendant treated these employees any differently than Plaintiff. That is, the evidence did not show whether these trainees were terminated like Plaintiff or hired despite their errors. The

5

general nature of the assertion that other trainees made technical errors, absent a specific articulation of disparate treatment, falls short of what is required under the law.

Nor did Plaintiff offer any specifics regarding who these other trainees were. Courts have expressed the view that a plaintiff must offer some level of specificity when identifying employees who are alleged comparators. *See Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013) (plaintiff's complaint alleged that he was treated less favorably than similarly situated female employees, "but offered no specifics regarding who those employees were or how they were treated different"); *Millner v. Sysco Food Servs. of Cincinnati, LLC*, No. 1:08-CV-841, 2010 WL 3467908, at *9 (S.D. Ohio Feb. 1, 2010) *report and recommendation adopted*, No. C-1-08-841, 2010 WL 3468110 (S.D. Ohio Aug. 31, 2010) (finding that a "blanket statement that 'all of the Procurement Specialists had struggled in recent years,' " did not meet the requirements of the fourth prong).

Without more specific identification of the orientees Plaintiff pointed to generally, the Court could not determine if they were in fact similarly situated to Plaintiff. It was not clear from the evidence whether these orientees committed the same number, magnitude, or frequency of technical errors as Plaintiff. Accordingly, Plaintiff's failure of proof on this element of the *prima facie* case rendered it inappropriate to send his discrimination claims to the jury.

### B. RETALIATION

Defendant also argued a failure of proof with regard to the causation element of Plaintiff's federal and state retaliation claims. In order to prevail on a claim for retaliation, a plaintiff must show that (1) he or she engaged in a protected activity; (2) the exercise of protected rights was known by the defendant; (3) the defendant took adverse employment action; and (4) there was a causal connection between the adverse employment action and the protected

activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). More specifically with regard to causation, a plaintiff must demonstrate that his or her protected activity was a "but-for" cause of the employer's adverse action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Plaintiff contended that he engaged in protected activity by allowing his attorney to send letters, which contained allegations of gender discrimination, to Defendant in October and November of 2012. Defendant maintained that Plaintiff's retaliation claim must fail as to causation, because any adverse action pre-dated its receipt of these letters. Defendant attempted to bolster this conclusion with three arguments.

First, Defendant argued that Plaintiff's testimony supported this conclusion. While testifying on cross-examination, Plaintiff stated that by September 2012, he had come to the realization that Lake Hospital System would not be employing him. Defendant maintained that the admission proved that by September 2012, Defendant had decided to terminate.

Next, Defendant asserted that the relevant adverse employment action here was Defendant not scheduling Plaintiff for any shifts after his orientation ended in late April 2012, rather than Plaintiff's formal termination in December 2012. Defendant cited to *Mickens v. Correctional Medical Services, Inc.*, 395 F. Supp. 2d 748, 752 (E.D. Ark. 2005), for the proposition that in the PRN context, there is no material factual or legal distinction between being terminated and not being scheduled for any further PRN work. Defendant also noted that the court in *Bryant v. Rolling Hills Hospital, LLC*, 836 F. Supp. 2d 591, 609 (M.D. Tenn. 2011), held that an employer's decision not to schedule a PRN nurse for any shifts constituted an adverse employment action.

7

Lastly, Defendant pointed to *Clark County School District v. Breeden*, 532 U.S. 268, 272, (2001), where the Supreme Court held that causation was not established in a Title VII retaliation action. The evidence showed that a supervisor decided to transfer the plaintiff before the plaintiff had served the defendant in a lawsuit. *Id.* Prior to the suit, the supervisor had communicated to plaintiff's union director that she was contemplating the transfer. *Id.* The Court went on to hold that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id.*

Despite Defendant's arguments, the Court concluded that there was evidence in dispute on several aspects of when Defendant contemplated not scheduling and terminating Plaintiff. For example, Diane Weber, the director of Lake Hospital System's radiology department, testified that in the months that followed Plaintiff's orientation period, the institution continued to assess its PRN needs for the summer. She explained that there was the potential, with additional training, that the hospital would provide Plaintiff with an assignment, despite his allegedly egregious technical and behavioral transgressions.

Additionally, Lake Hospital System required Weber to consult with human resources before terminating an employee. Human resources manager, Tiffany Clegg Olin, testified that she did not consult with Weber about the termination until some time around the end of October 2012. Counsel's first letter, which Weber acknowledged receiving prior to the termination, was dated October 24, 2012.

Finally, Plaintiff's supervisor, Carol Rossa, advised him to call personnel at the hospital to find out about scheduling. Plaintiff made multiple calls to Defendant. At no point before legal counsel contacted Defendant was Plaintiff told the specific status of his employment or that

8

he would not be scheduled for hours. Accordingly, taking the evidence in the light most favorable to Plaintiff, there was sufficient evidence here for the jury to find either way with regard to retaliation.

### C. PUBLIC POLICY CLAIM

Finally, Defendant moved to dismiss Plaintiff's public policy claim arising under Ohio common law.[1] To state a claim for wrongful discharge in violation of Ohio public policy, a plaintiff must establish the following four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law; (2) dismissing employees under the circumstances alleged by plaintiff would jeopardize the public policy; (3) plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer had no overriding legitimate business justification for the dismissal. *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70 (Ohio 1995). The first two elements are questions of law while the last two are questions of fact. *Id.* at 70.

Plaintiff could not meet the requirements of the second element, often referred to as the "jeopardy" element. To prove this prong, "the plaintiff must show that there is no other recourse or remedy available." *Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004) (*citing Wiles*, 96 Ohio St.3d at 224). There is no need to recognize a common law claim for wrongful discharge where there already exists a statutory remedy that adequately protects society's interest. *Id.*

Ohio courts have refused to recognize public policy race discrimination or retaliation claims because Ohio Revised Code Chapter 4112, with its "full panoply of remedies" adequately protects society's interests. *Green v. CGI Technologies & Solutions*, 911 F. Supp. 2d 513, 525

---

[1] Defendant moved pursuant to Federal Rules of Civil Procedure 50(a) and 12(b)(6). Federal Rule of Civil Procedure 12(h)(2) permits a party to make a motion to dismiss pursuant to Rule 12(b)(6) at any time through a trial on the merits.

9

(N.D. Ohio 2012); *Garcia v. Third Fed. Sav. & Loan Ass'n of Cleveland*, No. 1:06-CV-1990, 2007 WL 1235820, at *4 (N.D. Ohio 2007) (citing cases where Ohio courts have followed the logic in *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240 (2002), and declined to recognize claims for wrongful discharge based on public policy expressed in Chapter 4112).  The Sixth Circuit has also dismissed retaliation claims in violation of public policy under circumstances where Title VII and Chapter 4112 provide adequate remedies to protect society's interests. *Carrasco*, 124 F. App'x at 304.

Plaintiff's public policy claim was based on his consultation with an attorney to oppose what he believed to be unlawful discrimination.  Likewise, Plaintiff's statutory retaliation claims proposed that he was terminated for consulting with counsel and complaining of, through counsel's correspondence to Defendant, alleged discrimination.  These claims were not sufficiently distinct.  If Plaintiff's factual allegations were proven true, he would have had sufficient remedies available by virtue of Ohio Revised Code Chapter 4112 and Title VII.  Under these circumstances, there was no justification for allowing a separate cause of action for violation of public policy.

## II.     CONCLUSION

For the foregoing reasons, the Court GRANTED Defendant's motions for judgment on the pleadings with regard to Plaintiff's state and federal discrimination claims and Ohio public policy claim, but DENIED them as to Plaintiff's state and federal retaliation claims.

/s Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: May 21, 2015.